329 So.2d 501 (1976)
AMCO UNDERWRITERS OF the AUDUBON INSURANCE COMPANY
v.
AMERICAN RADIATOR AND STANDARD CORPORATION et al.
No. 10626.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Iddo Pittman, Jr., Hammond, for appellant.
Ernest L. O'Bannon, New Orleans, for appellees.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
Defendants-appellants, American Radiator and Standard Corporation, Aetna Casualty and Surety Company, and Tappan Company, appeal the granting of a subrogation claim to plaintiff-appellee, Amco Underwriters of the Audubon Insurance Company, for a fire loss that plaintiff paid to their insured, Dorchester Webb.
Judgment was rendered against the defendants, in solido, for $8,334.54, together with interest at the rate of 7 percent per annum from date of judicial demand until *502 paid, and for all costs, including expert witness fees in the sum of $300. From this judgment, all defendants have appealed. We affirm.
The home of Dorchester Webb, located in Slidell, St. Tammany Parish, Louisiana, was damaged by fire on December 16, 1972. Webb was the first occupant of the subject house, having purchased it in 1965. At the time of the sale the house was not completely finished. Some work remained to be done in the kitchen, and the heating unit was not connected to its butane fuel source. The pipes with which to connect the unit to the fuel source were present but had never been connected.
Webb decided to use natural gas instead of butane, and since he was a construction worker and familiar with plumbing, he changed the gas orifices so that the unit would burn natural gas. He then connected the heater unit with the natural gas source himself, bypassing the pipes which were originally installed for butane.
The unit's thermostat and a required "on-off" switch were located in the hallway of the house. The power switch, when in the "off" position, completely terminated all electricity flowing to the heating unit. However, the pilot light, which burned natural gas, would continue to burn even though the power switch was in the "off" position.
Webb and his family exclusively used the "on-off" switch rather than the thermostat to control the unit.
On the morning of the fire, Mrs. Webb routinely turned the power switch to the "off" position in preparation for a shopping trip in Slidell. However, her automobile would not start, and she and her daughter returned to the house to drink coffee and prepare to decorate the house for Christmas. A short while later her attention was drawn to loud noises in the attic which she investigated and discovered that the heating unit was on fire.
The plaintiff's expert electrical and mechanical engineer, Joseph E. Leininger, testified that the solenoid gas valve regulating the entry of the gas into the combustion chamber of the heater did not fully close when Mrs. Webb de-energized the unit by turning the power switch off. The valve allowed gas to pass into the chamber where it was ignited by the pilot. As a result of the power being off, the blower fan did not activate to blow the heated air out of the chamber, through the heating ductwork and into the house. As a consequence of the fan's failure to blow the hot air from the combustion chamber, the heat therein became so intense that it ignited the supporting rafters, resulting in the damage complained of.
The defendants' heating technician, Kenneth E. Varndell, agreed with Leininger's theory concerning the origin of the fire. Varndell was not an engineer and was not tendered as an expert to the court.
The valve in question was removed by the plaintiff subsequent to the fire and examined by Leininger, but he could not ascertain the exact reason the valve would not seat properly. Varndell never examined the valve because it was lost by Leininger subsequent to his examination thereof.
Defendants denied liability for the fire, and alternatively contended that the plaintiff was barred from recovery by the contributory negligence of their insured. In an attempt to prove that Webb was contributorily negligent in installing the subject unit, the defendants' witness, Varndell, pointed out that this particular unit was not one which could readily be adapted to natural gas. In addition to the change of orifice performed by Webb, the unit required a pressure regulator to adjust for the difference in pressure between natural gas and butane, and also required a "drip leg" to remove moisture from the gas. Webb did not install either a regulator or drip leg.
*503 Varndell contended that the malfunction of the valve could have been caused by the fact that the pressure was not regulated and/or by moisture contained in the natural gas since no drip leg was installed.
Varndell's testimony for the defendants clearly established that the subject unit should be turned on and off only by the thermostat. The company recommends cutting the electricity off in the manner routinely done by the Webbs only to service the unit or in an emergency. The reason for this recommendation is that the fan, which blows the heated air from the combustion chamber and thereby prevents it from overheating, will not activate when the power is off. However, when the power is on, the rise of temperature from such an occurrence as herein will activate the fan and heated air is blown into the house. The heated air would continue to be blown into the house until such time as the occupants became overheated and checked the unit. This action of the fan is, therefore, a built-in safety feature of the unit.
Varndell acknowledged that a power cut-off switch such as that utilized by the Webbs is required by virtually all safety codes and that his company recommends it to be close to the unit itself.
However, Varndell also acknowledged that there are no instructions in the manual for this particular unit which would put the user on notice that the described "on-off" switch should not be used to operate the unit. It is uncontradicted that the homeowner in the instant case was not aware that by turning the power to the unit off he was destroying one of the safety features of the unit, that is, the fan's automatic response to elevated temperature in the combustion chamber.
Without passing on the question of the homeowner's contributory negligence, the trial judge found that the malfunction of the valve was not the cause of the fire. He concluded that the "cause" of this fire was Mrs. Webb's use of the electrical power switch to turn off the heating unit, which, in turn, deactivated the fan motor, thereby eliminating one of the unit's safety features.
After reaching his conclusion concerning the cause of the fire, the trial judge found that the defendants had a duty to warn users of the unit concerning the danger of using the power switch to control the unit and, therefore, held defendants liable for the damage resulting from their failure to so warn.
There is little doubt but that the leaking valve was a substantial factor without which the fire would not have occurred. Therefore, it was one cause-in-fact of the plaintiff's loss. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
There also can be little doubt but that the failure of the described safety feature, that is, the fan's automatic response to elevated temperature in the combustion chamber, was likewise a substantial factor and an additional cause-in-fact of the plaintiff's loss. Dixie, supra.
Therefore, the first issue on this appeal is:
Should only one of the causes-in-fact of the fire bear the legal responsibility for the accident, and if so, which one; or did both causes-in-fact concur in producing the accident and, therefore, should both share the legal responsibility therefor?
In this regard we note the following language from Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971):
"* * * The keys for the solution of the issue of responsibility when there is more than one cause-in-fact of damages are (1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been *504 breached and (2) the legal or policy considerations which grant excuses from certain consequences which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults." (242 So.2d at 831)
The exact risk anticipated when the subject valve leaked was that the leaking gas would be ignited in the combustion chamber and perhaps cause an increase in the temperature inside the house as a result of the fan's response to the flames. The exact risk would not include the burning of the home as occurred herein, even though that would always be a risk generally associated with the use of a potentially dangerous instrumentality such as this heating unit. The exact risk anticipated would not have been the occurrence of the instant fire since the unit had a built-in safety feature described above which was designed to activate in the event the valve leaked.
It follows, therefore, that the exact risk anticipated by the safety device actually did occur. The temperature in the combustion chamber rose and ordinarily the fan would have been activated. However, due to the fact that the user had turned the fan's power off, the fan did not respond and the fire occurred.
The safety feature's failure to respond and protect the home against the exact risk anticipated makes that failure the legally responsible cause of the fire.
As we have determined that the fan's failure was the legally responsible cause of the fire, the second issue on this appeal is a determination of who should bear the financial burden for the resulting damage.
The defendants contend that they are not liable for the damage since their product was not defective. Alternatively, they argue that the fire occurred because the homeowner negligently utilized the "on-off" switch rather than the thermostat to control the unit. Accordingly, they assert that the contributory negligence of the plaintiff's insured bars plaintiff's recovery.
Concerning the negligence of the homeowner, the record is devoid of any evidence whatsoever which would have served to warn or put the homeowner on notice that turning the power to the unit off also deactivated the described safety feature. There was likewise no showing that this particular homeowner knew or should have known through any independent knowledge of his own of the danger involved in turning the unit's power completely off.
For those reasons, the user cannot be held to have been negligent.
On the other hand, the manufacturer of a potentially dangerous instrumentality such as the instant heating unit has a duty to instruct reasonably foreseeable users of their product with regard to its safe use. Williams v. Allied Chemical Corporation, 270 So.2d 157 (La.App. 1st Cir. 1972), writs refused, 271 So.2d 875 (La.1973).
This duty exists even though the product is not defective. Rather, it is the potential harm which can result through improper use of the product that gives rise to the duty to instruct or warn. We therefore, find that the defendant manufacturers breached their duty to the instant user by not instructing or warning that user of the danger of routinely using the "on-off" power switch to control this particular heating unit.
There are no legal or policy considerations which would grant these manufacturers an excuse from the consequences flowing from their breach of duty. Pierre, supra. The manufacturer of a potentially *505 dangerous instrumentality is always held to a high degree of care. These defendant manufacturers knew or should have known that the instant heating unit would be installed with an "on-off" switch in addition to the thermostat. They correspondingly owed a duty to reasonably foreseeable users of that unit to instruct or warn them with regard to the proper use thereof. In this regard they breached their duty to the plaintiff's insured and that breach subjects them to liability for the loss suffered by the plaintiff.
The defendants have not contended that the amount awarded to plaintiff was excessive, and, therefore, for the reasons assigned herein, the judgment of the trial court is affirmed, at appellants' cost.
AFFIRMED.