338 So.2d 379 (1976)
AVOYELLES COUNTRY CLUB, INC., et al., Plaintiffs-Appellants,
v.
WALTER KIDDE & COMPANY et al., Defendants-Appellees.
No. 5596.
Court of Appeal of Louisiana, Third Circuit.
October 18, 1976.
*380 Gold, Hall, Hammill & Little by H. B. Bruser, III, Alexandria, for plaintiff-appellant.
John L. Pitts, Alexandria, for defendant-appellee.
Before MILLER, WATSON and PETERS, JJ.
PETERS, Judge and hoc.
This suit arose out of the destruction by fire of the Avoyelles Country Club building and contents. The fire occurred on August 16, 1972 and started in the club's kitchen. The club's cook was grilling a steak which caused a grease fire on the grill. There was a large hood above the grill and the flames entered the hood. Robert Boone, the club manager, extinguished the fire on the grill with a portable fire extinguisher but soon realized the fire had spread through the hood and into the attic above the kitchen. Boone directed the spray of the portable extinguisher into the hood until the extinguisher was empty but was unable to extinguish the fire, which quickly spread throughout the building. The building and its contents were totally destroyed.
At the time of the fire, the hood above the grill was equipped with an automatic fire extinguishing system manufactured by defendant Walter Kidde & Co. This extinguisher was designed to operate automatically in the event of fire but failed to operate, as will be explained hereafter.
Defendant Donnie B. Sober installed the bulk of the fire extinguishing system in a utility room adjoining' the kitchen. It consisted of a cylinder containing carbon dioxide under high pressure, a canister filled with 30 pounds of dry chemical, and a triggering mechanism. In case of fire, the triggering mechanism was intended to open a valve on the CO2 cylinder, releasing the high pressure gas into the dry chemical canister, where it would expel the chemical through delivery pipes which terminated in the hood. The automatic triggering mechanism consisted of a system of cables, a spring, a fusible link, and a cam to open the CO2 valve. The spring, under tension, was connected to the cam by a short cable. The end of the cable was attached to the spring by a "preassembled cable loop," formed by bending the end of the cable back and attaching it to another point on the cable with a brass clamp crimped around it. This loop was made by the Kidde Company during manufacture. The spring was held open, or energized, by another cable which went to the hood in the kitchen. In the hood, the other end of this cable was attached to the fusible link, which was designed to melt in the heat of a fire. When the link melted, it released the long cable, which in turn released the energized spring. The spring would contract, pulling the short cable and the attached cam, and the cam would open the CO2 valve to release the CO2, which would propel the dry chemical to the hood area to extinguish the fire.
The expert testimony at trial clearly showed the extinguisher failed to function because the pre-assembled loop in the cable attaching the cam to the spring was defectively made. The brass clamp which was supposed to hold the loop together had not been sufficiently crimped to prevent the end of the cable from slipping out. When the fusible link melted and the spring contracted, the end of the cable slipped out of the clamp and thus the cable was no longer attached to the spring. For this reason, the cam was not pulled and the CO2 valve was never opened.
In addition to the automatic triggering device, the extinguisher was equipped with a manual release mechanism which allowed the system to be activated by a mere push or pull on a handle. The manual control *381 handle was located in the utility room. It is conceded that during the fire, no one attempted to manually trigger the system. It is also clear the defective cable loop was not in any way a part of the manual release system and thus the system could have been manually activated in spite of the defect in the preassembled cable loop.
After the fire, a number of insurance companies which provided fire insurance coverage paid the Country Club for part of the loss, with the Country Club absorbing the remainder because of insufficient coverage. These insurers and the Country Club sued Walter Kidde & Co., Donnie B. Sober, the dealer who installed the system, and E. T. Gremillion & Son Fire Extinguishing Service. E. T. Gremillion & Son was later dismissed from the suit by summary judgment. The suit was predicated on liability for the defect in the fire extinguishing system which prevented its operation during the fire. It was stipulated by all parties that in the event liability were found, the damages recoverable were $104,274.01. This apparently included a demand by the Country Club for $600.00, the purchase price it had paid for the defective extinguishing system.
It is not disputed by defendants that the fire extinguisher was defective. In this court, and in the court below, defendants contended plaintiffs were barred from recovery because the Country Club was guilty of contributory negligence or improper use of the extinguisher system. It was alleged recovery was barred because (1) the loss was caused by the Country Club's failure to properly maintain the automatic fire extinguishing system, (2) the Country Club failed to install the manual control in a place readily accessible in case of fire, (3) the Country Club's manager, Robert Boone, negligently failed to manually activate the system, and (4) the Country Club failed to instruct its employees of the existence and use of the manual control.
The lower court rendered judgment for the Country Club against Walter Kidde & Co. for $600.00 based on redhibition, with an award of $500.00 for attorney's fees. Walter Kidde & Co. neither appealed nor answered the appeal, so this judgment is now final. LSA-C.C.P. 2133. All other demands of plaintiffs were rejected. In his written reasons, the trial judge held there was no evidence indicating the spread of the fire would have been prevented even if the extinguisher had functioned properly. In his written reasons denying plaintiffs' motion for a new trial, the trial judge indicated further that the Country Club was contributorily negligent, primarily for its failure to instruct the club employees in the manual operation of the fire extinguisher.
For reasons to be given, we reverse.
Plaintiffs rely squarely on the decisions of the Supreme Court in Weber v. Fidelity and Casualty Ins. Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971), and Media v. Mercedes-Benz of N. A., Inc., 262 La. 80, 262 So.2d 377 (1972).
We must first consider the issue of causation, as the lower court held the evidence did not establish that the fire would have been extinguishable, and the loss prevented, even if the extinguisher had operated properly.
There is abundant evidence showing the fire would have been extinguished had the extinguisher functioned. George Pappas, one of plaintiffs' expert witnesses, testified the extinguisher would have been adequate to put out the fire if it had operated. Furthermore, the system was designed to extinguish exactly the type of fire which occurred here. The system was certified by Underwriters' Laboratories after extensive testing showed it would extinguish such a fire. The preponderance of the evidence is that the fire would have been extinguished had the system operated.
We turn now to the affirmative defense asserted by defendants. The Installation Manual for the Kidde Model KHD-30DC system was introduced into evidence. The manual called for routine service inspections every six months. It is not disputed this maintenance was not carried out. The manual further states that if the system is located in a place which is not readily accessible, *382 the unit must be equipped with a remote control for manual activation located where it is convenient to the cooking area. This was not done in the instant case, nor were the club employees told of the existence of the manual release mechanism and its operation.
Concerning the lack of routine maintenance, the evidence shows the defect in the pre-assembled loop was not one which was likely to be discovered through routine maintenance. George Pappas testified that had a serviceman followed the maintenance procedures outlined in the installation manual, such a maintenance procedure probably would not have disclosed the existence of the defect. Therefore, the lack of maintenance is of no consequence because it was not a cause of the failure of the system.
Defendants' contentions concerning the improper location and lack of use of the manual release mechanism require a careful consideration of the Supreme Court decisions relating to the liability of a manufacturer for damages caused by the manufacturer's defective products.
In Weber, supra, the court held that:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."
In Weber, there is no mention of contributory negligence as a possible defense, the court saying only that the person injured must be "without fault." The court further held that plaintiff must prove the product was unreasonably dangerous to "normal use." Thus, if the product is safe for normal use and the plaintiff is injured by his misuse of it, the manufacturer is not liable.
In Media, supra, and in Rey v. Cuccia, 298 So.2d 840 (1974), the Supreme Court held that a purchaser of a defective product could recover in redhibition not only from his vendor but from the manufacturer as well. Furthermore, because a manufacturer is presumed to have knowledge of the vices of the products he makes, he is liable in redhibition not only for restitution of the purchase price but also for reasonable attorney's fees and damages. LSA-C.C. 2545; Rey, supra. The Media and Rey decisions are not predicated on fault and contain no discussion of defenses such as contributory negligence. The basis for these decisions is implied warranty, the warranty being that the thing sold is free of hidden defects and is reasonably fit for the product's intended use.
The notion that the product must be fit for its intended use appears to be functionally equivalent to the "normal use" requirement of Weber. Under either theory of recovery, the relevant inquiry is: What was the normal or intended use of the product and was plaintiff making such normal or intended use of it?
The Supreme Court has not ruled on the availability of contributory negligence as a defense, and we need not rule on its availability, for the only negligence defendants have asserted was the misuse of the extinguisher by the Country Club. Therefore, we need only decide whether the Country Club used the extinguisher in the normal manner in which it was intended to be used. This approach was taken by this court in Fox v. American Steel Building Company, Inc. (La.App.3rd Cir., 1974), 299 So.2d 364.
Turning now to the facts before us, we find defendants asserting the Kidde fire extinguishing system was not properly used because no use was made of the back-up system, i. e. the manual triggering device. We must decide whether use of the manual system was within the "normal or intended use" of the system.
It is obvious the system was designed, and was intended, to operate automatically in the event of fire, without the intervention of man. The fusible link was located *383 in the area to be protected, the hood over the grill. The link was designed to melt when it was heated to a temperature of 360 F and automatically trigger the system to extinguish the fire. Thus, absent some defect in the system there was no need for manual activation. Although the Installation Manual stated that the manual release mechanism could be used to trigger the system, it did not warn that the system might fail to perform automatically in case of fire. It has been held that a manufacturer is liable when a loss results from the manufacturer's failure to warn the user of the danger involved with a deviation from recommended procedure. American Guaranty and Liability Ins. Co. v. Little (La.App. 3rd Cir., 1976), 328 So.2d 706. From the information supplied by the manufacturer, the Country Club had no reason to suspect the extinguisher would not operate automatically in case of fire. We find that plaintiff's expectation that the extinguisher would function automatically was reasonable and plaintiffs did not misuse the extinguisher by failing to take steps to insure that the system would be triggered manually in the event of fire.
Accordingly, we hereby reverse the judgment of the lower court and render judgment in favor of plaintiffs in the amounts stipulated and against defendant Walter Kidde & Co., Inc.
Plaintiffs have not pursued their claim against defendant Donnie Sober, and the record indicates that he was guilty of no negligence and therefore incurred no liability. Consequently, all demands against Donnie Sober are denied.
In addition to damages, plaintiffs are entitled to recover reasonable attorney's fees. LSA-C.C. 2545. We hereby award $15,000.00 as attorney's fees.
For the reasons assigned, judgment is rendered in favor of plaintiffs and against Walter Kidde & Co., Inc., as follows: for Avoyelles Country Club, Inc., $49,073.08; for Aetna Casualty & Surety Co., $22,100.93; for Employers Liability Assurance Corp., Ltd., $16,250.00; for Houston Fire & Casualty Ins. Co., $8,125.00; and for Security Insurance Company for $8,125.00. On all these amounts, legal interest is owed from date of judicial demand until paid. Defendant Walter Kidde & Co., Inc. is further condemned to pay the amount of $15,000.00 as attorney's fees, this amount to be divided among the plaintiffs in proportion to the amount of the damage award to each. All costs are assessed against Walter Kidde & Co., Inc.
Reversed and rendered.