430 So.2d 1346 (1983)
Michael E. PAWLAK, et al., Plaintiffs-Appellees,
v.
Lucien BROWN, et al., Defendants-Appellants.
No. 82-692.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Rehearing Denied May 26, 1983.
*1347 Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendants-appellants.
Chris J. Roy, Alexandria, for plaintiffsappellees.
Before DOMENGEAUX, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
This is a personal injury and wrongful death action brought by Michael D. Pawlak and his parents Michael E. and Patsy Pawlak. The only defendant remaining in the suit is American Honda Motor Company, Inc. (Honda). The plaintiffs seek recovery of damages from Honda for the death of David Pawlak and for injuries received by Michael D. Pawlak as a result of an automobile-3 wheel motorcycle accident. Recovery from Honda, the manufacturer of the 3 wheel motorcycle, is based on products liability.
The accident was described by the trial court as follows:
"On November 27, 1974, the plaintiffs lived on the west side of La. Highway 1 near Echo, Louisiana, in Rapides Parish. On that day the two sons of Patsy and Michael E. Pawlak were riding a Honda ATC-90 owned by their uncle, Donald Guidry. Michael (sixteen years old) was operating the three-wheeled vehicle and David (six years old) was straddling the vehicle in front of his older brother.
"The highway [sic, obviously means driveway] of Richard Herde (a neighbor of the Pawlaks) is west of Highway 1, and lies perpendicular to it. A hedge parallels the driveway on its northern side. The Pawlak home lies two houses to the south, also on the west side of the highway. Immediately prior to the accident, Michael was heading east on the Herde driveway. Once he reached the highway, Michael intended to turn south and travel down its shoulder to reach the driveway of his home.
"Kenneth W. Ducote was driving south on La. 1 when he observed the heads of the Pawlak boys showing over the driveway hedge. As they appeared to be moving down the driveway toward the highway, Ducote removed his foot from the accelerator and `padded on' the brakes. However, he continued to travel south. As Michael neared the highway, he began *1348 to slow the ATC-90 by removing his thumb from the throttle to decelerate. He checked the highway for oncoming traffic and noticed the approaching Ducote vehicle.
"The driveway hedge which had blocked Ducote's view of the boys ended about ten feet from the highway's edge. As the Honda cleared the hedge, Ducote had an unobstructed view. He testified that as the Honda approached the highway it slowed and almost came to a complete stop. Suddenly, the front wheel `shot up' into the air and the Honda `took off' onto the highway, directly into the path of the oncoming Ducote vehicle. Both drivers attempted to avoid a collision; Michael swerved to his right and Ducote swerved to his left. Unfortunately, the collision was unavoidable. David Paul Pawlak was instantaneously killed, and Michael Dale Pawlak was seriously injured."
The trial court determined that the Honda ATC-90 was defective and rendered judgment in favor of Michael D. Pawlak in the sum of $200,000, and in favor of Michael E. Pawlak and Patsy Pawlak in the sum of $125,000 each for the wrongful death of their son David, as well as $8,687.20 for funeral and past medical expenses. From this judgment Honda has appealed.
The issues on appeal are:
1. Was Honda wrongly denied a trial by jury?
2. Was the Honda ATC-90 defective?
3. Did the trial court err in failing to find Michael D. Pawlak guilty of contributory negligence and/or fault?
4. Did the trial court err in failing to give the defendant credit due to the release of an alleged joint tort-feasor?
5. Were the awards excessive?
We will discuss these issues in the order presented.

1.
Was Honda Wrongly Denied a Trial by Jury?
Honda prayed for a jury trial in an amended answer filed nearly four years after an amended petition. Finding that the amended petition dealt exclusively with other defendants and alleged no facts with reference to Honda, the trial court concluded that Honda's answer was unnecessary, added nothing to the pleadings, and was filed solely for the purpose of circumventing the time limitations of LSA-C.C.P. art. 1732 for requesting a jury trial. The trial court granted a motion to strike Honda's demand for a trial by jury.
The trial court did not abuse its discretion by so ruling. See Barberito v. Green, 275 So.2d 407 (La.1973); Arbmahla High Corporation v. North American Co., 345 So.2d 1291 (La.App. 3rd Cir.1977); and Sonnier v. Gray Tool Co., 359 So.2d 1111 (La.App. 3rd Cir.1978).

2.
Was the Honda ATC-90 Defective?
A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who, without fault on his part, sustains an injury caused by a defect in design, composition or manufacture of an article. Hebert v. Brazzel, 403 So.2d 1242 (La.1981). However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product's defect caused the injury; and that the injury might reasonably have been anticipated by the manufacturer. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). Such a factual determination should not be disturbed by an appellate court unless it is clearly wrong considering all the evidence. Hebert v. Brazzel, supra.
The plaintiffs contend that the Honda ATC-90 could be accelerated in a manner other than by the thumb lever to the throttle, i.e., by simply pulling on the throttle cable which runs from the throttle to the carburetor. Plaintiffs argue that the accident more probably than not was caused by David pulling on the cable resulting in the *1349 acceleration of the machine to full throttle sending the Honda into the path of the Ducote vehicle.
In the present case the trial court in finding the Honda to be unreasonably dangerous to normal use stated as follows:
"On the ATC-90, the throttle-valve of the machine is activated by a lever on the right handlebar, which the driver operates with his thumb. The throttle cable, covered by an insulating sheath, extends from the handlebar to the carburetor, located below the rider's knee. The cable is physically unattached to the machine except at its two ends, the handlebar and inside the carburetor.
"To accelerate the ATC-90, a rider presses the thumb lever. To decelerate, he simply releases it. The spring-loaded system ensures that the engine returns automatically to an idle. This is the intended method of accerlerating the ATC-90. It is also the only method advertised by the manufacturer and the only method of which the general buying public is made aware. The evidence establishes, however, that there are other means by which the throttle mechanism can be activated.
"Mr. Edward R. Cababa, a witness for the defense, was a Supervising Engineer with Honda from 1970 to 1975. The Court accepted him as an expert witness in mechanical engineering and accident reconstruction. Cababa testified that the throttle mechanism can be activated in three ways. First, by pressing the thumb lever. Second, by pushing or pulling on the throttle cable. Third, by contact of the thumb lever with a rider's knee when a turn is made to the right. He also admitted that the purchaser of the vehicle is told only that it may be accelerated by use of the thumb lever.
"Robert W. Jameson, a Honda product litigation investigator, also testified for the defense. He admitted that although Honda knew of these other ways by which the machine could be inadvertently accelerated, it failed to advertise, warn or otherwise inform the machine's purchasers and operators of these possibilities. Lucien Brown, a Honda retail dealer in Alexandria, testified that he was aware of additional means of accelerating the machine, but did not inform purchasers. Donald Guidry, owner of the ATC-90, testified that when he purchased the ATC-90 from the Brown dealership he was not informed on any means of accelerating the vehicle other than by the thumb lever. Michael Dale Pawlak was similarly uninformed.
"A manufacturer must give warning of any danger inherent in his product's normal use which is not within the knowledge of an ordinary user. Chappuis v. Sears, Roebuck & Co., [358 So.2d 926 (La. 1978)]. The evidence adduced at trial indicates that the danger of acceleration by inadvertent activation of the throttle would not be obvious to the ordinary user of the ATC-90. Mr. Jameson testified that the defect would not even be apparent to most engineers absent a close examination of the vehicle.
"Thus the evidence establishes that the defendant Honda knew that the throttle cable could be activated by means other than that shown to the public in the ATC-90 owner's manual. The evidence indicates that the defendant made a deliberate decision not to warn the vehicle's purchasers of the danger. Such knowledge and failure to warn evinces a gross and callous disregard for the safety of the public.
"At this point the court applies the `risk-benefit' balancing test first articulated in Hunt v. City Stores, Inc., supra. Does the likelihood and gravity of harm posed by this defect outweigh the benefits and utility of the Honda ATC-90? The gravity of danger in this instance is significant. The likelihood of injury to the average user who is not warned about a potentially dangerous aspect of his vehicle by the manufacturer, who knew of the danger, is clear. Because it is primarily a recreational vehicle, the utility and benefits afforded the general public by the use of the ATC-90 is limited. The court cannot see any justification for the *1350 significant danger posed to the uninformed consumer.
"Furthermore, the court is of the opinion that the danger posed even to the informed consumerone made fully aware of the defect in designwould be too great to justify the continued marketing of this product.
* * * * * *
"Therefore, after weighing the likelihood and gravity of danger against the utility to the public of the ATC-90, the court believes that the ATC-90 is dangerous to an extent beyond that which would be contemplated by an ordinary consumer or user. Hebert v. Brazzel, Et Al, 403 So.2d 1242 (La.1981). It is the court's conclusion that the vehicle was `unreasonably dangerous to normal use' and thus is defective under Louisiana products liability law."
After a careful review of the record we cannot say that this factual determination is clearly wrong.
The trial court also determined that the ATC-90 was in normal use at the time of the accident. The evidence reveals that Michael D. Pawlak was intending to operate the vehicle on the shoulder of the highway and was carrying his brother as a passenger in front of him. Appellants argue that the instructions to the ATC-90 state the bike was to be used for off-theroad purposes and that the bike was not designed to carry two passengers.
As this Court stated in Cobb v. Insured Lloyds, 387 So.2d 13 (La.App. 3rd Cir.1980), writ denied 394 So.2d 615 (La.1980):
[1] Normal use is a matter of foreseeable use and may include something broader than operation exactly in accordance with the manufacturer's instructions. See, Fox v. American Steel Building Company, Inc. [299 So.2d 364 (La. App. 3rd Cir.1974)], supra; Avoyelles Country Club v. Walter Kidde & Company, [338 So.2d 379 (La.App. 3rd Cir. 1976)], supra; AMCO Underwriters of Audubon Insurance Company v. American R & S Corp., 329 So.2d 501 (La.App. 1st Cir.1976).
In the present case we agree with the trial court's determination that it was foreseeable use that Michael Pawlak would drive the ATC-90 to the shoulder of the driveway and that he would carry his younger brother as a passenger.
As to the element of causation, the trial court determined that the accident happened in one of two ways: either David Pawlak's knee struck the throttle lever or David grabbed the throttle cable causing the motorcycle to accelerate sending the Honda into the path of the oncoming vehicle.
We have examined the testimony. Leightor Sissom, plaintiffs' expert in the field of mechanical engineering, stated the Honda had an inadequate engineering design in the throttling mechanism. The inadequate design consisted of the cable being attached to the right handlebar running to the other end of the carburetor. The cable passes through a cable sheath to protect it. It is possible for the cable sheath to be displaced from its normal resting place activating the throttle system. The Honda can be accelerated simply by pulling on the throttle cable. Mr. Sissom found two throttle cable deformations. He felt that one was caused by the wreck and wondered if the other was caused by David pulling on the cable. Mr. Sissom stated a person has to move the cable a mere 5/8" to 3/4" to get the machine from idle to maximum rpms. He stated that the cable pulls easily and that the two deformations were approximately 5/8" apart (the distance necessary to accelerate to full throttle). The major deformation which he feels was caused by the wreck occurred where the throttle would have been at maximum rpms. He also stated that the machine may have been accelerated by the application of the throttle lever.
Mr. Cababa believed that the most likely cause of the accident was the application of the throttle trigger itself. He stated the throttle trigger could be activated by (1) voluntary activation of the throttle by the rider or (2) involuntary activation of the throttle by a passenger or rider, possibly by *1351 the right knee of the rider hitting the lever. He also admitted that the Honda could have been activated without the application of the throttle trigger itself, i.e. by the passenger pulling on the cable.
Mr. Jameson stated that he also observed a deformation in the cable housing in the full open throttle position. However, he felt that this damage occurred after the accident by the removal of the control lever.
Michael Dale Pawlak testified that he did not know why the Honda accelerated before the accident. He stated that he had removed his finger from the throttle lever and that the machine had properly decelerated.
In Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3rd Cir.1979), writs denied 371 So.2d 835 (La.1979) and 372 So.2d 568 (La.1979) this court stated:
In the leading products liability case, Weber v. Fidelity & Casualty Company of New York, [259 La. 599, 250 So.2d 754 (1971)], supra, the Supreme Court specifically addressed itself to the burden of proof in showing causation in a products liability suit. It was there stated:
"In this civil case, the plaintiffs' burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, as in this case, by circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
As we stated in the latter decision, 153 So.2d 397: `Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.'"
In the present case we find that the preponderance of the evidence established that the accident occurred by the grabbing or pulling of the cable. Dr. Sissom testified that he found two deformations in the throttle cable. One deformation was in the position where the throttle cable would have been in the closed throttle position and the other, more definite deformation, in the position where the throttle cable would have been in the open throttle position. Dr. Sissom believed the latter deformation was caused by the accident, and suggested that the other deformation was caused by David grabbing the cable. The only other way the machine could have been accelerated was by application of the throttle lever. Michael testified that he had taken his finger off the throttle lever. The experts for Honda hypothesized that the Honda may have been accelerated by David's knee hitting the throttle lever. Although this possibility is not negated by the evidence, we find the pulling of the cable to be the more probable cause of the accident.
Finally, we find that the trial court was not clearly wrong in determining that the injury might reasonably have been anticipated by Honda. The experts for Honda admitted knowledge that the ATC-90 could be accelerated by the pulling or grabbing of the throttle cable. As the trial court concluded, it is
"... reasonably foreseeable that a rider on a vehicle such as the ATC-90 taken unaware by a sudden, accidental acceleration of the vehicle, might be thrown from the vehicle or injured by the impact of the collision with another vehicle."
Because the four elements necessary to proof of a defective productunreasonable danger to normal use, a product in normal use at the time of injury, an injury caused by the defect, and reasonable foreseeability of such an injuryare supported by the evidence, we find that the trial court was not clearly wrong in determining that the Honda ATC-90 was defective.

3.
Was Michael Pawlak contributorily negligent in causing the accident?
The trial court after studying the jurisprudence determined that contributory negligence is not a defense to strict liability.
*1352 After reviewing the record to determine whether Michael's contributory negligence could be a defense to plaintiff's actions, we conclude that the record simply does not support a finding of contributory negligence on the part of Michael Pawlak. Therefore, we do not address the question of whether contributory negligence may serve as a defense to strict liability. See Morgan v. Hartford Accident & Indemnity Co., 402 So.2d 640 (La.1981).
There is no evidence in the record of contributory negligence on the part of Michael Pawlak. He testified that when he left the Herde house he proceeded toward the highway at a speed of approximately 10 mph. As he approached the highway he took his finger off the throttle and the machine decelerated almost to a stop. There is no evidence in the record to suggest that Michael Pawlak activated the throttle lever as the appellant argues.

4.
Was the defendant entitled to a credit?
Before this suit was filed Mr. and Mrs. Pawlak released the insurers who provided coverage for Michael D. Pawlak, reserving their rights against the driver of the other vehicle, his insurers, and other persons.
The appellant argues that if we find Michael D. Pawlak guilty of negligence in connection with the accident then the defendant would be entitled to a credit of 50% against any damages due the Pawlaks for the death of their son David.
Since we have found that Michael D. Pawlak was not guilty of any negligence which was the proximate cause of the accident, we need not address this issue.

5.
Were the damage awards excessive?
Michael was hospitalized in Rapides General Hospital for open reduction surgery to repair a fracture of the left hip. The necessary insertion and removal of pins together with a delayed union of the bone resulted in a healing process that took over two years. During this period Michael spent several months in bed and the entire time on crutches. There was extreme pain initially and arthritic pain persists even now.
Michael has a 3/8" shortening of the left leg and atrophy of the left thigh and left calf. He also has a sclerotic condition of the bone. This is a cystic area in the bone. At present he suffers from a 5% to 10% disability. If the cystic area collapses as much as 50% of the extremity will be impaired. There is no way of predicting the lifetime of the present heal. Michael was 23 at the time of trial. According to Dr. C.W. Lowrey, an orthopedist, within five to 10 years the cystic area can be expected to produce problems. Dr. Lowrey predicted that a collapse would occur. There is a 70% chance of further surgery which would entail replacement of the hip.
Both sides complain of Michael's award. Considering his past pain and suffering and disability, his present condition, and the rather pessimistic prognosis, we cannot say that the trial court abused its discretion in awarding him $200,000 in general damages.
The trial court also awarded Mr. and Mrs. Pawlak $125,000 each for the wrongful death of their son David.
As this court stated in Alizzi v. Employers Ins. of Wausau, 351 So.2d 258 (La.App. 3rd Cir.1977), writ denied 353 So.2d 1037 (La.1978):
[2-4] The parents are entitled to recover for their grief, and for their deprivation of love, affection and companionship.

Ogaard v. Wiley, 325 So.2d 642 (La. App. 3rd Cir.1975). In this regard it is appropriate to give consideration to the awards made in other similar cases, although these awards are by no means binding upon us. They are merely to be looked to for guidance.
David Pawlak was only six years old when he died. He had a very close relationship with his parents, especially Mr. Pawlak. It is clear from the record that both parents have suffered extreme grief from the loss of this child.
The trial court stated:

*1353 "In this regard, it is appropriate to consider the awards made in other similar cases, although these awards are by no means binding on the court. Recent awards for the death of a child have ranged from lows of $25,000, $35,000 and $40,000 to a high of $100,000, upheld by the First Circuit in Bullard v. State, Dept. of Transportation, Etc., 413 So.2d 606 (1982) and Palermo v. Allstate Insurance Co., 415 So.2d 437 (1982). In particular the court notes the case of Knotts v. State, Dept. of Highways, 395 So.2d 419 (La.App. 3rd Cir.1981) writ denied (1981) in which the Third Circuit upheld awards of $75,000 to each parent for the loss of their eleven year old girl.
"With this jurisprudence in mind, the court feels an award of $125,000.00 to each parent is just and appropriate."
It is apparent that the district court carefully considered these awards. After our own careful scrutiny of the record we cannot say that the trial court abused its discretion in making these awards.
The plaintiffs filed an answer to the appeal asking for an increase in the awards based on elements of damage not considered by the trial court. The plaintiffs argue that the trial court erred in failing to award damages to the father for the loss of his will to live; in failing to award damages to the mother for the loss of her marriage and home life; and in failing to award Michael D. Pawlak damages for mental anguish occasioned by his father's actions in blaming the accident on Michael.
To support these claimed elements of damage, plaintiff relied on the testimony of Dr. Davidson Texada, a psychiatrist. He examined the father three times. The history given to Dr. Texada was that the father, after the death of David, became depressed, bitter and withdrawn, and that he suffered from stomach upsets and insomnia. The doctor stated that the father was obsessed with the accident and the death of the child. The father attributed most of his motivation in life to his youngest child, David. He has had no motivation since the death of the child. He is a man of definite and very intense feelings. He has now resigned from life. The father had a very close identification with the child. The relationship was not the same with the older boy and the daughter. The father has been miserable for all these years. Anger is directed toward the older son, Michael. The doctor stated that the father is an obsessive, compulsive type individual.
Mr. Pawlak testified that he has had a steady regression in his marriage. He has not had sexual relations with his wife since the accident. He has been resentful towards Michael because he had told Michael to stay off the bike. His relationship with Michael has not been the same since the accident.
Patsy Pawlak and Michael D. Pawlak testified that the father constantly blamed Michael for the death of David since the accident, and finally ordered Michael to leave the house. Patsy Pawlak stated that her husband is withdrawn and that there is very little intimacy within the family now.
For the manufacturer of the product to be liable for injuries caused by the product's defect, the injuries must reasonably have been anticipated by the manufacturer. We do not find that the described behavior of the father causing further grief and injury to the entire family could have been reasonably anticipated by Honda. Therefore, we conclude that the trial court was correct in omitting these elements of damage in arriving at the awards.
For the assigned reasons the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.