**Leroy Roosevelt JOHNSON,**
**Plaintiff-Appellant,**

v.

**TENNECO, INC., Defendant-Appellant,**

v.

**LEVINGSTON ARMADILLO, INC.,**
**Defendant-Third Party**
**Plaintiff-Appellee.**

No. 83–3650.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1985.

Rehearing and Rehearing En Banc
Denied March 19, 1985.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Frank H. Spruiell, Jr., James E. Diaz, Lafayette, La., for Tenneco, Inc.

Reginald T. Badeaux, Jr., J. Michael Cumberland, New Orleans, La., for Johnson.

Richard N. Dicharry, Bradley F. Gandrup, Jr., New Orleans, La., for Levingston.

Before GOLDBERG, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Levingston-Armadillo received a jury verdict in its favor in this Louisiana products liability case. Since the jury instructions incorrectly stated Louisiana law, we reverse.

## I.

Sometime prior to 1978, Levingston manufactured a modular housing unit to be used to house the crew on Marlin Drilling Company's Rig No. 10, a stationary offshore drilling platform. Atop the housing unit was a heliport surrounded by a "safety net," which was composed of three by ten foot sections of chain link fence. Each section of fence was attached to the housing unit by angle irons, which were attached to the wooden beams of the unit with wood lag screws.

On September 18, 1980, Leroy Johnson was at work on the rig when a section of the chain link safety net suddenly fell, striking him on the back and seriously injuring him. Johnson sued Tenneco, the owner of the drilling rig, under Louisiana Civil Code Article 2322, which renders the owner of the platform strictly liable for certain defects in the platform.[1] Tenneco brought a third party action against Levingston, proceeding under the theory that

defects in the original construction of the safety net, not any failure to repair on their part, caused the accident. Under this theory, Tenneco would be entitled to indemnity from Levingston to the extent that Tenneco was held liable under Art. 2322. Tenneco settled with Johnson prior to trial, and the two united to pursue their respective claims for compensation and indemnity against Levingston. The primary issue at trial was thus whether there was any original defect in the design or manufacture of the safety net.

The evidence at trial established that modular living quarters and the accompanying heliport were frequently moved from one rig to another, and in fact were designed with that use in view. Expert testimony for Johnson and Tenneco was to the effect that the lag screws used to attach the safety net were inadequate for that purpose, since the lag screws tended to lose their holding power when removed and replaced. There was also evidence that the screw holes had been packed with scrap wood in an attempt to tighten them up, and that the rig's crane had hit the fence on a number of occasions, including one just prior to the incident causing Johnson's injury. On special interrogatories, the jury found that the unit was not defective when delivered by Levingston, and that Tenneco's failure to repair the fence was the cause of the accident.

## II.

The dispositive issue in this appeal is whether the district court erred in instructing the jury on one of the elements of Louisiana products liability law. The district court instructed the jury that under Louisiana law, Levingston could be liable for manufacturing defects in the safety net only if it was "in normal use" when the accident occurred. Normal use was defined as follows:

ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

---

1. Art. 2322. Damage caused by ruin of building.

Art. 2322. The owner of a building is answerable for the damage occasioned by its

By contrast, the phrase normal use does not take on its everyday meaning in this context. The phrase does not refer solely to routine or intended use. Instead, it encompasses all reasonably foreseeable uses for a product, *except those that result from a misuse or abuse of the product.*

(Emphasis added).

We agree with Johnson and Tenneco that this instruction is an erroneous statement of Louisiana products liability law.

■■■ In *LeBouef v. Goodyear Tire & Rubber Co.,* 623 F.2d 985 (5th Cir.1980), which involved the use of tires unsafe at high speeds on an automobile specifically designed for high speed, this court examined the Louisiana jurisprudence and concluded that a seeming misuse of a product may nonetheless constitute a normal use for products liability purposes:

"Normal use," however, is a term of art in the parlance of Louisiana products liability law, delineating the scope of a manufacturer's duty and consequent liability; it encompasses all *reasonably foreseeable* uses of a product. *See, e.g., Rey v. Cuccia,* 298 So.2d 840, 844 n. 2, 845 (La.1974) (duty to warn of 'possible hazard' known to manufacturer); *Amco Underwriters of the Audubon Insurance Co. v. American Radiator and Standard Corp.,* 329 So.2d 501, 504 (La.App. 1976) (duty to warn of dangers even from improper use of an otherwise nondefective product) ... Consequently, Ford cannot, on the basis of abnormal use, escape its duty either to provide an adequate warning of the specific danger of tread separation at such high speeds or to ameliorate the danger in some other way.

623 F.2d at 989. (emphasis in original). Thus a manufacturer is obliged to take into account foreseeable misuse in the design of his product. Plaintiff argued that Levingston should have considered the stress to the safety net from the blows the net and heliport received from the rig crane. If proper consideration had been given to the abuse to the net, plaintiff asserts that Lev-

ingston would have attached the net to the heliport with bolts running completely through the wooden beams rather than with the relatively insecure lag screws. The plain meaning of the instruction given in this case is that normal use excludes any misuse of the product, even if it is reasonably foreseeable. Since the instruction was erroneous, we must determine whether the error was prejudicial and requires reversal.

■■■ Tenneco and Johnson could not be prejudiced by this instruction unless evidence of a foreseeable misuse of the safety net was developed at trial. As we analyze the evidence, this depends upon whether sufficient evidence was presented to support a jury finding that Levingston should have foreseen that cranes or their loads would occasionally come in contact with the heliport or the net. Although Levingston's representative at trial testified that they simply manufactured the housing units according to customer specifications and thus had no reason to foresee that a crane would come into contact with the net, various rig employees testified that contact between the crane and the safety net was not an uncommon occurrence. The particular modular housing unit involved here was made for use on a relatively small platform. On this platform the rig crane works in a fairly restricted area, and must at times work in close proximity to the housing unit. There was testimony that Levingston employees visited the rigs to perform repairs on the housing units, and had in fact visited the Marlin Rig No. 10. Additionally, the housing units were designed to be moved by a crane, which increased the possibility that a crane could contact the safety fence. The manufacturer's duty certainly entails, particularly in the case of a specialized product such as this one, some inquiry into the circumstances in which the product will be used. Taking all of these circumstances into account, a jury issue is presented on whether Levingston knew or should have known that the crane could contact the safety net. See *Branch v. Chevron Intern. Oil, Inc.,* 681 F.2d 426, 429–30 (5th Cir.1982). Since con-

tact of the crane with the safety net could constitute a foreseeable misuse of the product, we REVERSE and REMAND for further proceedings consistent with this opinion.[2]

---

2. Tenneco's assertion that the district court erred in failing to grant its motion for a directed verdict is without merit. Tenneco and Johnson also urge that the district court erred in several other respects in instructing the jury. Since we reverse on the basis of the erroneous "normal use" instruction, we need not determine the substance of these complaints. We note, however, that interrogatories one and two read as follows:

    1. Do you find from a preponderance of the evidence that Tenneco, Inc., failed to repair the safety fence during the period the fence was used by the Marlin Drilling Company?

    2. Do you find from a preponderance of the evidence that this failure to repair was a legal cause of plaintiff's injuries?

On retrial, the district court should, depending on the evidence, consider broadening interrogatories one and two to reflect more accurately the scope of Tenneco's responsibility, including for defects in assembly and reassembly of the fence.