DOUCET, Judge.
This is an appeal from a jury verdict rendered in favor of a grower of Christmas cactus for damage to his crop.
In late 1986, Paulk Brothers Enterprises, Inc. (Paulk Bros.), a wholesale nursery, was seeking a new crop to fill the slow winter months. Keith Paulk, president of the corporation, consulted Travis Johnson, a salesman at Hammond’s Nursery Supply. Johnson suggested Christmas cactus, and referred Paulk to James Rowley, a grower in Bivens, Texas. Paulk visited Rowley’s operation, received detailed instructions on growing Christmas cactuses, and bought about 120,000 cuttings to begin the crop.
The cuttings were rooted in two inch pots in January 1987. According to Keith Paulk, they were transplanted into four inch pots in May, 1987. The cactuses were transplanted into a potting medium made by Paulk Bros, itself, containing styrofoam, peatmoss, lime and bark. Also added to the potting medium was Sierrablen 19-7-10 fertilizer, a time release fertilizer manufactured by The Sierra Chemical Company (Sierra) and sold to Paulk Bros, by Texas Processed Plastics d/b/a Hammond’s Nursery Supply (Hammond’s). Paulk stated that he applied the fungicides Tru-ban and Banlate alternately to the plants. Also applied was a pesticide called Yydate.
In mid-June 1987, Paulk noticed that the plants were not growing properly. He consulted Rowley who suggested application of a liquid fertilizer called Miller’s 20-20-20. On October 12, and November 16, 1987, Paulk Bros, threw out the entire crop, apparently believing it to be unsal-vageable.
On June 30, 1988, Paulk Bros, filed a petition alleging that the Sierrablen 19-7-10 destroyed their entire 1987 Christmas cactus crop and claiming damages under theories of redhibition and products liability. Named as defendants were Sierra, Hammond’s, and their insurers.
A jury trial was held on June 12-15, 1990. The jury returned a verdict finding that the Sierrablen 19-7-10 was not defective and allocating 30% of the fault for the loss of the crop to Sierra and 70% to Paulk Bros. Both Sierra and Paulk Bros, appeal.
We reverse on a finding that Paulk Bros, failed to carry the burden of proof required for either a redhibition or products liability claim.
La.C.C. art. 2520 defines redhibition as follows:
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
The plaintiff in an action in redhibition must prove the existence of such a defect by a preponderance of the evidence. Conmaco, Inc. v. Southern Ocean Corp., 581 So.2d 365 (La.App. 4th Cir.1991), writ denied, 586 So.2d 533 (La.1991); Beth Israel v. Bartley, Inc., 579 So.2d 1066 (La.App. 4th Cir.1991), writ denied, 587 So.2d 696 (La.1991); Commercial Union Ins. Co. v. Ryland Dodge & Chrysler, 457 So.2d 255 (La.App. 3rd Cir.1984); Henry v. Pitre Ford Co., 442 So.2d 1338 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 451 (La.1984).
In a products liability action on the other hand:
[T]he plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product’s defect caused the injury; and that the injury might reasonably have been anticipated by the manufacturer. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
Pawlak v. Brown, 430 So.2d 1346, 1348 (La.App. 3rd Cir.1983), writ denied, 439 So.2d 1072 (La.1983).
After reviewing the record we cannot find that the plaintiff has carried its burden of proving a defect under either standard.
First, it is far from clear that the problems were caused by the Sierrablen 19-7-10. It is unquestioned that Paulk made multiple applications of a variety of chemi *486 cals including Tru-ban, Banlate, Vydate, Miller’s 20-20-20 and Sierrablen 19-7-10. The evidence as to when these applications were made is inconsistent. It appears highly probable that applications of different chemicals were made on the same day. Further, the testimony of Dr. Alfred Einer, an expert horticulturist, was that the instructions for Tru-Ban, Banlate and Vy-date indicate that they should not be used together. He further testified that the Tru-Ban was not properly used if applied as stated by Paulk. Additionally, he stated that the amount of Miller’s 20-20-20 applied by Paulk Bros, was about five times the recommended application, and could have burned the roots off the plants. The testimony of Keith Paulk at trial indicated that the greenhouse in which the cactuses were grown had an average temperature of about 90°F. Dr. Einert testified that the optimum temperature for cultivation of Christmas cactuses is in the range of 60°-65°F range. Mr. James Rowley stated that in advising Paulk, he emphasized the importance of proper greenhouse conditions, especially light and temperature. Dr. Ei-nert stated that, in his opinion, the damage to the Christmas cactuses was caused by a combination of the improper use of Tru-Ban, Banlate and Vydate, along with an excessive application of Miller’s 20-20-20, excessive greenhouse temperatures, and improper watering.
Neither does the evidence tend to show that the Sierrablen 19-7-10 had a defect which rendered it either useless or its use so inconvenient and imperfect that Paulk Bros, would not have bought it had they known of the defect. In fact, the evidence shows that Mr. Rowley had successfully used Sierrablen 19-10-7 on his Christmas cactus crop for a number of years.
Further, the evidence indicates that, even if the product did cause the damage it was not in normal use at the time. The evidence indicates that, rather than any quality inherent in the product, the manner in which it was used could have caused any problems which occurred. The abnormally high greenhouse temperatures could have caused a rapid release of fertilizer. The evidence indicates that even this would not necessarily have caused damage had the Paulk Bros, “leached” the plants by watering the plants until water came out of the bottom of the pots. Rowley provided Paulk with literature from a large Florida Christmas cactus grower which described the care of Christmas cactuses. The booklet indicated that after fertilizing it was necessary to “leach” the plants to avoid the build-up of salts which could damage the plants. Although Paulk read the material, he did not know the meaning of “leach,” did not inquire into its meaning, and did not engage in the process. Further, the evidence indicates that the Sierrablen 19-7-10 fertilizer’s use should not have been combined with multiple applications of chemicals and other fertilizers.
Taking the evidence as a whole, we cannot find that the plaintiff carried its burden of showing that the product caused the damage to its crop or that it was defective under either a redhibition or a products liability standard. Accordingly, the judgment of the trial court is reversed. Judgment is rendered in favor of the defendants dismissing plaintiff’s claim at its cost. Costs of this appeal are assessed against the plaintiff.
REVERSED AND RENDERED.