| .DALEY, Judge.
This is an appeal by the plaintiff from a judgment dismissing its Petition for Recission of Sale and Damages. For reasons *2 assigned, we reverse the judgment of the trial court.
FACTS
The plaintiff, C & M Contractors, Inc. d/b/a/ C & M Bayou Fuel Docks (C & M), entered into a contract with the defendant, Team Persuasion Enterprises, Ipc., (Team), in which Team constructed a work boat for C & M. C & M took delivery of the boat, named Miss Olla, on May 28, 1996. After an engine was placed in the boat, it was discovered that the boat was unstable. The president of C & M, Kenny Daigle, contacted the president of Team, Carl Touchard, who agreed the boat was unstable. Mr. Touchard offered to make modifications to the boat to improve the stability, but | ¡¡Mr. Daigle refused. C & M then filed suit against Team to rescind the sale, alleging that the boat was unsuitable for its intended purpose as a vessel to transport men and materials on inland waterways. Plaintiff alleged that had it known of these deficiencies in the boat, it would not have purchased the vessel.[1]
At the trial of this matter, Mr. Daigle testified that he provided specifications to Mr. Touchard to build the Miss Olla. These specifications, known as the Hanko specifications, were used for boats previously built for plaintiff by another boat builder. Mr. Touchard examined one of these other boats and measured various dimensions of the other boat in preparation for building the Miss Olla.
Mr. Daigle explained that after the engines were installed in the Miss Olla, he took the boat on a “sea trial.” The boat “would fall off of the V and go on the side.” Mr. Touchard was contacted and he rode in the boat. Noticing the instability, Mr. Touchard offered to put “wings” on the side to stabilize the boat. Mr. Daigle refused, reasoning that it was a new boat and should not have to be modified in order to be stable. The other six boats owned by C & M, which were built using the Hanko specifications do not have any stability problems.
Mr. Perry Beebe, an expert in the field of marine surveying, testified on behalf of plaintiff. He surveyed the Miss Olla and inspected another boat built to the Hanko specifications. Mr. Beebe testified that the Miss Olla was not built to the Hanko specifications and used photographs to explain that the “V” in the hull of Miss Olla was more excessive than the “V” on the other Hanko boats. He opined that the excessive “V” caused the boat to lean to either side. He testified that the Miss Olla was not suitable for its intended use as a work boat, stating “If you put crews on this thing, it would scare them to death trying to make a turn with it if it doesn’t turn |4over.” Additionally, the width and length of the Miss Olla are shorter than that of the specifications. However, Mr. Beebe explained that these differences do not account for the instability, rather it is the five and one-half inches difference in the “dead rise” in the center “V” between the Miss Olla and the other Hanko boat that causes the Miss Olla to be unstable.
Mr. Touchard testified that after being given the Hanko specifications, he measured one of the Hanko boats. His measurements revealed that a six foot sheet of aluminum was used for the bottom of the Hanko boat. A six foot sheet of aluminum was used in constructing the Miss Olla and the difference in width of two inches was due to the contour of the boat.
Mr. Touchard testified that he explained to Mr. Daigle that a six foot bottom would not be stable but Mr. Daigle insisted he wanted a six foot bottom. Mr. Touchard agreed that the Miss Olla was unstable, but insisted the boat was built to the Han-ko specifications. When Mr. Daigle complained about the instability of the boat, Mr. Touchard offered to “add something to help with the stability.” Mr. Daigle re *3 fused and wanted the hull rebuilt. Mr. Touchard attempted to sell the Miss Olla but was unable to do so because of the stability problems. Mr. Touchard acknowledged that he inspected one of the plaintiffs other Hanko boats, taking pictures of the boat. He did not measure the “dead rise” or the “V rise.” Mr. Touchard conceded that the difference in the “dead rise” between the two boats would account for some of the instability of the Miss Olla.
At the conclusion of trial, the trial judge dismissed the plaintiffs petition, stating in written reasons the “contract and specifications introduced into evidence were woefully deficient to permit a clear understanding of the intent of the parties as they relate to the final dimensions of the boat in question.” Plaintiff has appealed | ¡¡alleging that the trial court erred in finding the plaintiff did not carry his burden of proving the vessel was not suited for its intended purpose.
DISCUSSION
Louisiana Civil Code article 2520 provides in pertinent part:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
On all sales in Louisiana, there is an implied warranty that the thing sold is fit for its intended purpose. Williams v. Ring Around Products, Inc., 344 So.2d 1125 (La.App. 3rd Cir.1977). This warranty can only be avoided by an express and explicit waiver. Id.
In a redhibition suit, the plaintiff must prove that the product contained a hidden defect at the time of sale, which was not apparent on inspection, and which rendered the thing unfit for the use intended or that its use became so inconvenient that the purchaser would never have purchased the product had he known of the defect. Moreno’s, Inc., v. Lake Charles Catholic High Schools, Inc. 315 So.2d 660 (La.1975). These elements must be proved by a preponderance of the evidence. Paulk Bros. Enterprises, Inc., v. Sierra Chemical Co., 599 So.2d 484 (La. App. 3rd Cir.1992), writ denied, 604 So.2d 1311 (La.1992). “Proof by a preponderance of the evidence simply means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable that not.” Ross v. Premier Imports 96,2577 (La.App. 1st Cir. 11/7/97), 704 So.2d 17 at 20, unit denied, 97-3-35 (La.2/13/98) 709 So.2d 750. Uncontroverted evidence should be taken as true to establish a fact for which it is offered, as long the record is void of any circumstances |fito question the reliability of any testimony and there are no sound reasons given for its rejection, Id.
Looking at the evidence as a whole, we find the plaintiff carried its burden of proving it is entitled to recission of the sale of the Miss Olla because it has a redhhibi-tory defect. The record makes it clear that the boat built by the defendant was not suitable for its intended purpose. The defendant acknowledges that the boat was unstable but claim this instability was due to the fact that the boat was built according to the specifications provided by plaintiff. However, the testimony was uncon-troverted that the plaintiff owned six other boats built to the Hanko specifications. Pictures of one of these other boats and a picture of the Miss Olla were attached to Mr. Beebe’s report which was admitted into evidence. A comparison of these pictures, as well as Mr. Beebe’s testimony, makes it clear that the Miss Olla was not built to the Hanko specifications. The “V” on the Miss Olla is more excessive than that of the Hanko boat. Mr. Touchard testified that he did not measure the “V rise” or the “dead rise” of the Hanko boat. He explained the picture he took of the Hanko boat was lost and never replaced. *4 Mr. Touchard testified that he informed plaintiff that a boat with a six foot bottom would not be stable, yet there was no waiver that the boat was not suitable for its intended use as a crew boat. The law is well settled that a buyer has a right to rely on an implied warranty that the thing sold is suitable its intended use, and if this warranty is not waived the seller warrants the thing sold as fit for the purpose intended. J.B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693 (1949). Accordingly, the plaintiff is entitled to rescind the sale of the Miss Olla.
The evidence indicates that the plaintiff paid the defendant $14,137.50 for the Miss Olla.
|7For reasons assigned, the Judgment of the Trial Court is reversed and Judgment is rendered in favor of C & M Contractors, Inc. d/b/a C & M Bayou Fuel Docks and against the defendant, Team Persuasion Enterprises, Inc., rescinding the sale of the boat named Miss Olla and awarding monetary damages to plaintiff in the amount of $14,137.50, the cost of the boat, plus interest from date of judicial demand. Team Persuasion Enterprises, Inc. is to bear all cost of court.

REVERSED AND RENDERED.

1 .ORDER
REHEARING GRANTED.
Considering the Application for Rehearing, rehearing is Granted for the limited purpose of determining whether we should remand this case to the trial court for consideration of plaintiffs claim for attorney’s fees, expert witness fees, and costs. This matter is to be reconsidered by brief only by the panel on March 3, 1999 at 12:15 p.m.
The parties may file additional briefs on or before February 12, 1999. This matter will be submitted ■ on briefs only. This court will render a decision in due course.
|! ON REHEARING
In our original opinion, we held the plaintiff has a claim in redhibition against the defendant, Team Persuasion Enterprises, Inc., as the seller of the vessel in question under Civil Code article 2520. As the defendant was also the manufacturer of the vessel, he is presumed to know the vessel had a redhibitory defect. C.C. art. 2545. Article 2545 further provides the seller is hable for reasonable attorney fees in this instance.
Accordingly, we affirm our appellate decision rescinding the sale, and remand this matter to the trial court for a determination of attorneys fees under Civil Code Article 2545, and assessment of court costs and expert witness fees.

. Team filed a reconventional demand against C & M which was dismissed by the trial court. Team has not appealed the dismissal.