488 So.2d 1306 (1986)
Elmer and Betty JOHNSON, Plaintiffs-Appellees,
v.
GEORGIA CASUALTY AND SURETY COMPANY, et al., Defendants-Appellants.
No. 85-462.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Rehearing Denied June 11, 1986.
*1307 Dawkins, Coyle, & Carter, Michael S. Coyle, Ruston, for defendants-appellants.
Humphries and Humphries, G. Earl Humphries, III, Alexandria, for plaintiffs-appellees.
Provosty, Sadler & deLaunay Ronald J. Fiorenza, Alexandria, for intervening-appellee.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, J. Pro Tem.[*]
DOMENGEAUX, Judge.
This is an appeal by Dobson Pulpwood, Inc. and its insurer Georgia Casualty and Surety Company (collectively referred to as "Dobson") from a judgment of the district court awarding damages to the plaintiffs-appellees, Elmer and Betty Johnson. Pursuant to La.C.C. Art. 2315, the plaintiffs brought suit for damages for the wrongful death of their 19 year old son; they also sued to recover for the pain and suffering the decedent endured between the accident and the time of his death. The jury awarded each parent $300,000.00 on the wrongful death claims, and $25,000.00 to the parents for their son's survival action. Dobson contests both the propriety of any award and, alternatively, the amount of the award.[1]
*1308 The decedent, James Kevin Johnson, was the only child of Elmer and Betty Johnson who adopted him when he was only a few months old. Young Kevin was afflicted with a club foot which was finally corrected after years of surgery. Kevin completed high school and secured a position as a truck driver for William J. Monroe d/b/a/ Monroe Timber Company (Monroe). Kevin was working in the course and scope of his employment with Monroe when his fatal accident occurred.
Monroe operates a wood yard in Glenmora, Louisiana. Monroe's business involves purchasing timber from landowners, cutting the timber, and hauling it to his wood yard. From the yard wood is shipped to a timber mill. Monroe owns his own equipment, carries his own worker's compensation insurance, and is free to sell his wood to any mill with whom he cares to contract business. At the time of Kevin Johnson's accident, Monroe customarily sold his wood to two mills, one of which was Dobson's chip mill in Campti, La.
Dobson Pulpwood, Inc. produces wood chips for delivery to the Willamette Paper Mill. Dobson secures some of its wood supply from its own wood concentration yards. The workers at these concentration yards are employed by Dobson, and the wood hauled from these yards is transported in vehicles owned by Dobson. Since Dobson is unable to satisfy its own demand for wood, Dobson contracts with independent wood yard owners like Monroe. Dobson pays these independent haulers a fixed price per cord. The price varies between haulers depending on how far the independent has to haul the wood and whether he carries his own worker's compensation insurance. Monroe entered into a verbal agreement with Dobson to deliver wood to the latter's chip mill. For approximately one year prior to Kevin Johnson's death, Monroe had been delivering wood to Dobson at least twice a week. However, Monroe was not bound to deliver any specified amount of wood to Dobson. Further, Monroe was free to, and in fact did, sell wood to other local mills.
Kevin Johnson was employed by Monroe. On February 1, 1983, Kevin delivered a load of wood to Dobson's Campti mill. After parking his truck, Kevin went to the rear of the trailer to unbind the wood. While working at the trailer's chains, a giant "Catapillar" machine used to load wood onto a conveyor deck backed into Kevin, pinning him down and crushing him between the machine and the rear of the trailer. This tremendous blow did not instantly kill Kevin. He was able to walk around the side of his truck, spit out his tobacco, and tell other workers in the area what had happened to him. Employees of the Dobson mill rushed Kevin to the Natchitoches Parish Hospital. En route, Kevin lost consciousness. He died shortly after arrival at the medical facility.
The appellants advanced several arguments concerning the jury's factual determination that Dobson was not the statutory employer of Kevin Johnson. Initially, the appellants complained that the jury committed manifest error in failing to find Dobson Pulpwood, Inc. the statutory employer of Kevin Johnson.
"In the absence of statutory provisions, an employee of a contractor would not be considered to be an employee of the owner or `principal.' However, by statute, such an employee is deemed to be an employee of the principal when the contractor performs work for the principal in the principal's trade, business or occupation. R.S. 23:1061; Johnson v. Alexander, 419 So.2d 451, 454 (La.1982). A principal, for purposes of workers' compensation, is defined by statute as:
`... any person who undertakes to execute any work which is a part of his trade, business or occupation in which *1309 he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.' R.S. 23:1032.
Whenever a person fits the definition of a principal, he shall be obligated by the workers' compensation statute to the injured employees of his contractors. Such a principal is known commonly as a `statutory employer.' See Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978); W. Malone & H. Johnson, Workers' Compensation § 121 (La.Civ.L. Treatise vol. 13 1980)."
Lewis v. Exxon Corp., 441 So.2d 192 (La. 1983).
In order for La.R.S. 23:1061 to be applicable, four essential elements must be present:
"(1) The relationship of principalcontractor (as distinguished from another type of relationship, i.e., vendor-vendee) must exist.
(2) There must be a contract between the principal and contractor for the execution by the contractor of the whole or any part of the work being undertaken by the principal.
(3) The `work' which is the subject of the contract must be part of the principal's trade, business or occupation.
(4) The injured employee must be enaged in the execution of the `work' as described above." (Citations omitted)
Johnson v. Alexander, 406 So.2d 1378 (La. App. 3rd Cir.1981); reversed on other grounds, 419 So.2d 451 (La.1982).
In the present case, a vendor-vendee relationship best describes the interactions between Monroe and Dobson. A principal-contractor relationship necessarily implies that the principal has some degree of control over the actions of his contractor. Dobson exercised no control over Monroe's operations. Dobson did not direct Monroe to cut wood on certain tracts. Neither did it supply equipment or extend loans to Monroe. Dobson paid Monroe by the cord. Monroe (and not Dobson) paid the landowners for their timber. Monroe was not obligated to deliver wood to Dobson; neither was Monroe prohibited from delivering wood to other mills, which in fact Monroe did. In short, Monroe operated a totally independent operation and sold the products of that operation to various mills, including Dobson's.
While it can be assumed that the supply of wood to Dobson was part of the mill's trade, business or occupation (element 3 above), Lewis v. Exxon Corp., supra, we cannot say that Monroe contracted with Dobson to execute the whole or any part of Dobson's work. This is true because Monroe was not hired to deliver part of Dobson's work supply; Monroe merely sold wood to Dobson on a regular basis.
Finally, we note that a reviewing court must give great weight to the factual conclusions of the trier of fact, and those conclusions should not be disturbed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Inasmuch as we agree that the relationship between Dobson and Monroe was not one of principal-contractor, and therefore that Dobson was not the statutory employer of Kevin Johnson, we find no clear error. This assignment is without merit.
In connection with the jury's finding that Dobson was not Kevin Johnson's statutory employer, the appellants also claimed:
(A) The trial court committed an error of law when it denied Dobson's Motion To Limit Arguments. The motion requested that the judge prohibit plaintiffs' counsel from informing the jury that a finding of a statutory employer relationship between Dobson and Kevin Johnson would insulate Dobson from all tort liability.
(B) The trial court erred in admitting a question concerning whether Dobson held worker's compensation insurance on Kevin Johnson.
(C) The trial court erred in sustaining plaintiffs' objection to a question presented to a Dobson Pulpwood, Inc. employee concerning *1310 whether the work Kevin Johnson was performing on the day of his death was necessary to Dobson's day-to-day operations.
(D) The trial court erred in charging the jury, although there is some authority for the charge, since the appellants' rejected charges were more appropriate.
After a thorough examination of the record, the applicable jurisprudence, and the logic advanced by the parties in their respective briefs, we find that whatever error may have been committed in the lower court was harmless and insufficient to justify a reversal on the issue of liability.
The appellants' second general category of errors questions the amount of the award rendered to the plaintiffs. Specifically, the appellants maintain that the damage awards for Kevin Johnson's pain and suffering and the parents' loss of love and affection were excessive and disproportionate to awards rendered in similar cases. Appellants also claim that certain evidence unduly influenced the jury to award a greater amount of damages in the wrongful death claim that it would have awarded absent the allegedly prejudicial evidence. Inasmuch as we reverse the lower court's awards of $300,000.00 per parent and render our own damage awards, we see no need to address this latter issue.
Appellants submit that the jury abused its much discretion in the award of damages for the pain and suffering of the deceased from the onset of his injury until he lapsed into unconsciousness. However, the only case cited by the appellants in support of their argument is a 1977 Louisiana appellate case which awarded the deceased's heirs $10,000.00 for the pain he endured in the hour before his death. Walker v. St. Paul Insurance Companies, 343 So.2d 251 (La.App. 1st Cir.1977), writ denied, 345 So.2d 61 (La.1977). On the other hand, the appellees cited two cases which award $20,000.00 and $25,000.00 for the decedent's pain and suffering in the few hours before his death. Lalonde v. Missouri Pacific Railroad Company, 366 So.2d 619 (La.App. 3rd Cir.1978), writ denied, 369 So.2d 155 (La.1979); Pitre v. Aetna Life & Casualty Company, 434 So.2d 191 (La.App. 3rd Cir.1983).
In the case before us, the expert medical witness testified that Kevin Johnson suffered the most excruciating kind of tearing pain before he died. Further, the expert gave his opinion that Kevin was most certainly aware of the fatal nature of his injuries. Exactly how long Kevin was conscious to endure his pain is open for debate; the evidence established that Kevin lingered for five to thirty minutes before he lost consciousness.
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive."
Reck v. Stevens, 373 So.2d 498 (La.1979).
Under the unfortunate facts of this case, we are unable to say the jury abused its discretion in awarding Kevin's heirs the sum of $25,000.00 for his pain and suffering. La.C.C. Art. 1999.
The jury also awarded $300,000.00 to each parent for the loss of their child's love, affection, and companionship. Using the two-tier analysis outlined in Reck v. Stevens, supra, we conclude these awards are excessive. Our initial inquiry is whether the jury's award for the particular injuries and their effects upon these particular injured persons is a clear abuse of the trier of fact's much discretion. La.C.C. Art. 1999; Reck v. Stevens, supra. In this case the plaintiffs testified that they were unable to have children of their own, so they adopted Kevin who remained their only child. They told how they did things with Kevin that most all loving parents do with their sons; baseball games, fishing, and camping. The Johnsons testified to their close family relationship with their son and the great pain this loss has caused them.
*1311 This is not a case where the parents relied on the child for emotional and/or financial support. Neither have the parents produced evidence of mental or physical illness caused by their son's death. On the record before us we find only a normal family relationship between the appellees and the deceased. For that reason, we hold the awards of $300,000.00 to each parent to be excessive. Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986).
Since we have found a clear abuse in the jury's discretion in awarding damages, we must resort to prior awards to determine what amount of damages would be appropriate in the present case. Reck v. Stevens, supra. A review of the jurisprudence from 1983 on shows us that the Courts of this state have been unwilling to award a parent in a wrongful death action more than $150,000.00. Indeed, in all the cases approaching the $150,000.00 mark it seems the award was either to a single parent or to a parent who had proven mental or physical injury caused by their child's death. Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), writ denied, 437 So.2d 1135 (La.1983); Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir. 1984), writ denied, 450 So.2d 1309 (La. 1984), writ denied, 450 So.2d 1311 (La. 1984); Johnson v. Folse, 438 So.2d 1137 (La.App. 1st Cir.1983); Pawlak v. Brown, 430 So.2d 1346 (La.App. 3rd Cir.1983).
"[T]he appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded." (Citations omitted).
Norris v. Pool Well Service, Inc., 460 So.2d 1117 (La.App. 2nd Cir.1984). Based on the above-cited cases, we determine that the highest award the trial court could have reasonably rendered was $125,000.00, although an even lower award may have been more appropriate. Therefore, we will reduce the awards to Elmer and Betty Johnson to $125,000.00 each.
Finally, the appellants allege the trial court's error in denying their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In other words, the appellants claim (1) that the evidence presents no genuine issue of material fact and that Dobson is entitled to judgment as a matter of law, and (2) that the jury verdict and judgment are clearly contrary to the law and the evidence. La. C.C.P. Arts. 1811 and 1972. Earlier in this opinion we have discussed the merits of the appellants' statutory employer defense and found no error in the trial court's refusal to grant a motion for judgment notwithstanding the verdict or new trial on the issue of quantum has been corrected in our reduction of the plaintiffs' awards.
For the above and foregoing reasons, the judgment of the district court awarding Elmer and Betty Johnson the sum of $300,000.00 each for the loss of the love and affection of their deceased son is reduced to the sum of $125,000.00 each. In all other respects, the lower court judgment is affirmed. All costs on appeal are to be taxed one-half to appellants and one-half to appellees.
AFFIRMED, AS AMENDED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The appellants have assigned eight assignments of error, as follows:

1. The trial judge committed reversible error in failing to maintain defendants [sic] Motion to Limit Arguments and Reference to the Jury whereby the jury would be advised that a finding of a statutory employer relationship would result in a denial of an award of damages to the plaintiff.
2. The trial judge erred in allowing testimony concerning payment of workmen's compensation insurance premiums.
3. The trial judge erred in allowing testimony to the effect that the plaintiffs were required by trial stipulation to pay $40,000.00 to defendants should there be recovery.
4. The trial judge committed reversible error in refusing to allow Roland Dobson to testify as to what work was necessary for the proper day to day operations of the chip mill operated by Dobson Pulpwood, Inc.
5. The trial judge committed reversible error where he charged the jury that in order to find that Monroe Timber Company had contracted with Dobson Pulpwood, Inc., that it was necessary to find that Monroe Timber Company was obligated to do work for Dobson Pulpwood, Inc.
6. The jury committed manifest error as a matter of fact and as a matter of law when it failed to find Dobson Pulpwood, Inc. the statutory employer of Kevin Johnson.
7. The jury committed manifest error as a matter of fact and as a matter of law in the award of damages in the amount of $625,000.00 to the plaintiffs.
8. The trial judge committed manifest error in refusing to grant defendant's Motion for a Judgment Notwithstanding the Verdict or a New Trial as to the issue of liability and damages, or in the alternative, to damages alone. For clarity and continuity, we choose to address the issues involved in a different order than the way they were presented to us.