597 So.2d 555 (1992)
Pearlie JAMES, Juanita Viverette on Behalf of the Minor Child Condria Wicker, and Shirley Viverette
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Shelia Lewis Barnett.
No. 91 CA 0101.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
*556 James A. Wattigny, Hammond, for plaintiff-appellee.
Stacey Moak, Baton Rouge, for defendant-appellant La. Dept. of Transp. & Development.
Tom Matheny, Hammond, for defendant-appellant La. Dept. of Public Safety and Trooper Joe Guthrie.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
LOTTINGER, Judge.
This appeal comes to us from a judgment casting the State of Louisiana, Department of Transportation and Development (DOTD), for 70% of the damages resulting from an intersectional collision. Plaintiffs have answered the appeal contending that the trial court assessed too high a percentage of fault, 30%, to another defendant, Shelia Barnett, the driver of the vehicle in which the injured and killed parties were riding. All parties challenge the trial court's factual findings, the percentages of fault assigned, and the general damages awarded.

FACTS
This accident occurred on March 4, 1986, shortly after 8:00 p.m., at the intersection of Louisiana Highways 440 and 450, just east of the Tangipahoa/Washington Parish line. Highway 450 intersects Highway 440 in a "T" with Highway 450 running north from Highway 440, which runs east-west at this location. To the south of the intersection is a small grocery store with a parking lot between it and the eastbound lane of Highway 440. The intersection lies just west of the crest of a low hill that appears, *557 in photographs of the scene, to drop at a greater slope toward the east.
On the night of the accident, Barnett was driving three friends to watch a basketball game in Mount Hermon. Shirley Viverette occupied the front passenger seat while Condria Wicker and Lisa Taylor occupied the rear seats. Barnett testified that she had previously been to Mount Hermon several times via Highways 440 and 450, but that this was her first time driving this route; she had previously made such trips as a passenger on school buses and in other cars.
Barnett approached the intersection from the west, on Highway 440, while approaching her from the east was Louisiana State Trooper Joe Guthrie, Jr., on his way home from work. Guthrie testified that he has lived in the area of the intersection and traversed it almost daily during the past 13 years. Guthrie described what he saw as the accident unfolded before him. As he topped the hillcrest, he saw the oncoming Barnett vehicle in his lane. He immediately realized there would be a head-on collision. He slammed on his brakes, skidding until he hit the Barnett vehicle which was west of the intersection. The impact spun his car around, and down the road until it came to a rest facing opposite the direction he had originally travelled.
After exiting his vehicle, Trooper Guthrie examined the occupants of Barnett's vehicle, who were strewn about the intersection. Barnett's Ford Tempo had come apart along a floor seam behind the front passenger seat, and the roof had separated from the windshield pillars at their top. The vehicle was essentially halved, throwing Barnett, Viverette, Wicker, and Taylor from their seats. None of them wore a seatbelt.
Barnett, Viverette, and Wicker appeared to be in fairly good condition to Trooper Guthrie, but Lisa Taylor did not. Guthrie found her lying on the bank of a ditch, unconscious but with her eyes open and the pupils different sizes, indicating to him a head injury. She was breathing in a raspy, coarse manner, indicating that she had sustained internal injuries. Following a brief stabilization period in a local hospital, Taylor and Wicker were airlifted to Ochsner Hospital. Taylor died there at 1:46 a.m. as a result of multiple traumatic injuries, and hemorrhaging.
Lisa Taylor's mother, Pearlie James, and Condria Wicker's mother, Juanita Viverette, filed suit with Shirley Viverette against Barnett and her insurer, State Farm Mutual Automobile Insurance Company (State Farm). Wicker was a minor at the time of the accident and the trial. Later the suit was amended to add the State of Louisiana, through the DOTD, and the Department of Public Safety and Corrections, as well as Trooper Guthrie individually. Guthrie was also an individually named defendant. The Viverettes settled with Barnett and State Farm prior to trial, via a "Restricted Joint Motion to Dismiss With Prejudice," and James released Barnett and State Farm via a "Motion for Authority to Withdraw Funds Into the Registry of the Court," which conditioned receipt of the funds upon the compromise. Thus, the defendants at the time of trial were the State through the DOTD, Department of Public Safety and Corrections, and Trooper Guthrie.
Following trial, the court entered judgment in favor of the plaintiffs, assessing 70% fault to DOTD for allowing this intersection to remain in a defective condition despite having been aware of prior accidents involving left turns. The trial court also assessed 30% fault to Shelia Barnett for beginning her turn, onto Highway 450, at too early a point to safely cross the intersection. The trial court found that Trooper Guthrie and the Department of Public Safety and Corrections were not negligent, and dismissed the plaintiffs' claims against them.

ASSIGNMENTS OF ERROR
In appealing, DOTD assigns as error the following:
(1) The trial court erred in permitting the case to be tried against the State in Tangipahoa Parish.

*558 (2) The trial court erred in failing to hold Shelia Barnett solely responsible for the accident.
(3) The trial court awarded excessive general damages to Pearlie James.
(4) The trial court erred in failing to reduce the plaintiffs' awards by the percentage of fault assessed against Shelia Barnett.

ANSWER TO THE APPEAL
In answering the appeal, the plaintiffs assign as error the following:
(1) The trial court assigned improper weight to the testimony of Department of Public Safety and Corrections employees, and Trooper Guthrie, and in accepting them as expert witnesses in the field of accident reconstruction.
(2) The trial court failed to find the Department of Public Safety and Corrections, and Trooper Guthrie, liable to plaintiffs.
(3) The trial court assigned an excessive percentage of fault to Shelia Barnett.
(4) The trial court awarded an inadequate amount of general damages to plaintiffs.
For convenience, we will discuss these assignments of error in a different order than that in which they are presented. We will also, without specifying them, address one or more assignments of error together.

VENUE
In this assignment of error, the State argues that La.R.S. 13:5104(A)[1] contains a mandatory venue provision similar to that contained in La.R.S. 13:5104(B)[2], requiring that the plaintiffs in this suit file their petition in East Baton Rouge Parish or Washington Parish, but not in Tangipahoa Parish.
Even the most cursory reading of these two provisions indicates an important difference, a difference highlighted by the proximity of the two provisions. In section 5104(A) the word "may" allows additional venues for a suit against the State or one of its agencies; in section 5104(B) the word "shall" requires that a certain venue be used. See Texaco, Inc. v. Plaquemines Parish Government, 527 So.2d 1128, 1130-1131 (La.App. 1st Cir.) (Lanier, J., concurring), writ denied, 533 So.2d 359 (La. 1988). The State's argument, that La.R.S. 13:5104(A) contains a mandatory venue provision is disingenuous, and without merit.
Thus, the trial court correctly overruled the State's declinatory exception raising the objection of venue on grounds that La.R.S. 13:5104(A) did not mandate that this suit be filed only in East Baton Rouge Parish or Washington Parish. Furthermore, we note, because the section is permissive, that the exception could have been overruled as untimely and waived, due to the fact that it was filed after DOTD had answered the plaintiffs' suit. La.Code Civ.P. articles 925 and 928.

FAULT
The liability of DOTD, fixed by the trial judge at 70% of the fault attributable in this accident, is a question of fact. A trial judge's factual findings are entitled to great weight and will not be disturbed absent manifest error because the judge has viewed the evidence first-hand with explanatory testimony from witnesses whose demeanor and credibility is known only to him. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The evidence at trial focused mainly on DOTD's negligence. The plaintiffs, first, attempted to show that the crest of the hill east of the intersection made safe turns almost impossible when turning from Highway *559 440 left, or north, onto Highway 450. Expert testimony established that the line of sight, at the center of the intersection, over the hill, during the daytime was either deficient or minimally acceptable according to standards published by the American Association of State Highway and Transportation Officials (AASHTO). The nighttime line of sight, relevant here, was incorrectly measured. Mr. William Burt, an expert in traffic engineering, mistakenly measured this distance with two approaching cars that used high-beam headlights. Trooper Guthrie testified that his and Barnett's vehicles were using their low-beam headlights at the time of the accident. Thus, this evidence is incomplete, but other evidence indicates that the nighttime line of sight is less than the daytime line of sight, because drivers do not have the benefit of sight to recognize automobiles. Any light from oncoming vehicles appears as a glow and is not indicative of distance.
The evidence also establishes, however, that Barnett was not at the center of the intersection when she began her fatal maneuver. The physical evidence of the accident indicates that Barnett's car was struck 27 feet west of the intersection's center, in Trooper Guthrie's lane of travel. Mr. Burt testified, assuming her speed at 25 m.p.h. from the police report, that Barnett must have begun her turn into Guthrie's lane approximately 67 feet prior to the point of impact, or more than 90 feet from the center of the intersection. This testimony was criticized by the plaintiffs' expert, Duaine Evans, who stated that he knew of no basis for making this calculation, given the point at which Barnett's car was hit, but the testimony was not challenged for the assertion that Barnett must have turned into Guthrie's lane well before she reached the intersection.
What this means, then, is that the line of sight, measured from the center of the intersection, even if it was deficient at that point, is irrelevant to any understanding of this accident because Barnett never got to that point, the point at which a deficient line of sight might have affected her ability to safely turn, and the point at which she should have begun her turn. La.R.S. 32:104 prohibits turning from a position other than that specified in La.R.S. 32:101. Section 101 mandates that a driver attempting a left turn must approach the turn "in that portion of the right half of the roadway nearest the center line [of the intersection]." La.R.S. 32:101(A)(2), (emphasis added).
The physical evidence also shows that Barnett crossed over into Guthrie's lane of travel in preparation for a turn she knew she had to take to get to Mount Hermon. Though she admitted she had travelled this route before, it was always as a passenger and never as a driver. Thus, it is unclear how familiar she was with this route, especially this intersection. She could offer no explanation for her erratic driving, believing that she had gone to the center of the intersection before turning. All of the physical evidence contradicts Barnett's belief as to her location when turning. It has long been the law that a driver driving in this manner is grossly negligent. Aucoin v. State Farm Mutual Automobile Insurance Company, 505 So.2d 993, 996 (La. App. 3rd Cir.1987). Prioux v. Dressell, 109 So.2d 254, 257-258 (La.App. 1st Cir.1959), (citing cases as far back as 1926 for this proposition). It has also been held that such driving is the sole factual and legal cause of cross-over left turn accidents. Aucoin at 996; Prioux at 258.
However, the trial court did not find Barnett the sole factual and legal cause of this accident. Other than a "T" intersection sign and an advisory speed sign, there were no other signs indicating the danger presented by this intersection for an eastbound driver. Appropriate signs were available that would have indicated the danger to an eastbound driver. But, DOTD either failed to install such signs, or decided that such signs were not necessary. We have viewed the videotape of this intersection depicting this intersection during daylight hours, and conclude that it was a dangerous intersection. We can only imagine the danger presented at night, particularly to a driver unfamiliar with this intersection.
*560 Therefore, we conclude that the trial court was not manifestly erroneous or clearly wrong in its assessment of fault. This conclusion obviates consideration, anew, of the fault of the Department of Public Safety and Corrections, and of Joe Guthrie.

EXPERT TESTIMONY
The plaintiffs assert that the trial court improperly accepted Department of Public Safety and Corrections employees as expert witnesses. The decision whether to accept a witness as an expert in a trial is one left to the "much discretion" of the trial court, and the trial judge's judgment will not be disturbed unless it is clearly erroneous and involves a misunderstanding of law. Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1185 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986); McSweeney v. Department of Transportation & Development of Louisiana, 442 So.2d 659, 664 (La.App. 1st Cir. 1983). Plaintiffs have not pointed out any such error, and we have not found any. This assignment of error is without merit.

QUANTUM
DOTD appeals the amount of damages awarded to Pearlie James for the loss of her daughter. In its brief, DOTD asserts, after describing Taylor's life with her mother in several cryptic paragraphs, that the trial court exceeded the highest permissible award by $50,000. Plaintiffs, Pearlie James, Shirley Viverette, and Juanita Viverette, on behalf of her daughter Condria Wicker, contend in their answer to DOTD's appeal that the general damages awards are inadequate. Pearlie James was awarded $200,000.00 for the death of her daughter, and Shirley Viverette and Condria Wicker, were awarded $15,000.00 and $10,000.00, respectively, as general damages for the physical and psychological injuries they suffered. No party challenges the special damages awards, for medical and funeral expenses, and we will not disturb those awards.
DOTD asserts that "[w]ithout going into detail as to the reasons, it is clear that the trial court exceeded...the highest permissible award" by $50,000. DOTD cites several cases, on behalf of its contention that an award of $100,000 for the loss of a child is appropriate, showing a range of awards from the $100,000 benchmark award for a typically close family relationship, to the $150,000 upper benchmark award for an unusually and uniquely close relationship. St. Hill v. Tabor, 549 So.2d 870, 871 (La. App. 5th Cir.1989), writ denied, 556 So.2d 1262 (La.1990) ($100,000); Johnson v. Georgia Casualty and Surety Company, 488 So.2d 1306, 1311 (La.App. 3rd Cir.), writ denied, 493 So.2d 1223 and 1224 (La. 1986) ($125,000); Acy v. Aetna Casualty and Surety Co., 499 So.2d 262, 264 (La. App. 1st Cir.1986), writ denied, 503 So.2d 16 (La.1987) ($150,000); Siemann v. Teston, 517 So.2d 242, 249 (La.App. 1st Cir. 1987) ($150,000).
In opposition to the cases cited by DOTD, the plaintiffs point to the case of Whittington v. American Oil Company, 508 So.2d 180, 185, 187 (La.App. 4th Cir.) writ denied, 512 So.2d 436 (La.1987) to show that the award made to Pearlie James is reasonable and that it should be upheld. In Whittington, awards of $200,000 and $225,000 were upheld in favor of respective sets of parents, each parent in a set receiving a like amount. (But, in their answer to DOTD's appeal, the plaintiffs adopt the position that the award made to Pearlie James was insufficient. However, plaintiffs offer no reason as to why this is so.)
Initially, we examine an award of damages to determine if the trial court's award is a clear abuse of the trier of fact's "much discretion." Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Without such a finding, an appellate court should not alter a trial court's award of damages. Id.
The evidence establishes that Pearlie James gave birth to her daughter in Los Angeles, where she was living at the time. Lisa Taylor was James' only child. During her life, Taylor did not live exclusively with her mother, but often lived in Louisiana with her maternal grandparents during periods in which her mother continued to live in Los Angeles or was living in Missouri. *561 These separations were typically for about a year in duration, but were apparently the result of James' desire to remove her daughter from the dangerous environment of the Los Angeles "projects" in which James lived due to her poverty. The testimony adduced indicates that Taylor was able to maintain a close relationship with her mother as a result of frequent contact over the telephone. Their relationship was described as one in which the two, when they lived together, were practically inseparable, notwithstanding contradictory testimony showing that when James finally returned to Louisiana, got married, and lived near her relatives' homes, Taylor continued to live with an aunt. But this was apparently due to Taylor's desire to be with her aunt's children who were her own age. Taylor did move in with her mother and stepfather later, and resided there continually until her death.
Given these facts, we find that the trial court's award of $200,000 was an abuse of its "much discretion" because the relationship between mother and daughter, in this case, could not have been as close as those in which parent and child had lived together without interruption. Furthermore, the frequency and duration of separations between mother and daughter is in stark contrast to the family situations such as those in the cases cited above, wherein the parents received lesser awards in damages for the similar loss of a child. Thus, we find that the award of $200,000 vastly exceeds the benchmark award for the loss of a child, even in an uninterrupted family relationship, and we must reduce the damages to that amount which is the highest amount the trial court could reasonably award. Siemann v. Teston, 517 So.2d at 248. We believe that $150,000 is the highest amount reasonably within the trial court's discretion.
As to the damages claimed by Shirley Viverette and Condria Wicker, the evidence established that each of them had "bad" dreams following the accident, a non-negligible amount of pain resulting from the injuries they sustained in the accident, and had incurred substantial medical bills for treatment of their physical and psychological injuries. However, Viverette and Wicker were less than illuminating while testifying about their pain and "bad" dreams, and the effect on their lives. A thorough review of the record convinces us that the testimony by Viverette and Wicker, regarding their injuries, adequately informed the trial court of the extent of their suffering, and of the amount of their damages. Accordingly, we do not find that the trial court abused its "much discretion" in making the general damages awards to Shirley Viverette and Condria Wicker. But, the general damages award to Pearlie James was excessive and will be reduced to $150,000.

PROPORTIONATE REDUCTION
In its appeal, DOTD assigned as error the failure of the trial court to reduce the plaintiffs' recovery by the amount of fault attributable to Shelia Barnett. La.Civ. Code article 1803. The signed judgment makes no such reduction. During oral argument before this Court, the parties agreed that this was an apparent oversight in the drafting of the judgment. Further, the parties stipulated that the awards in favor of the plaintiffs should be reduced by the percentage of fault assigned to Shelia Barnett because they had dismissed their claims against Barnett and her insurer, State Farm Mutual Automobile Insurance Company, prior to trial.

CONCLUSION
Therefore, for the above and foregoing reasons the judgment of the trial court is AFFIRMED in its assessment of fault, and damages insofar as Shirley Viverette and Condria Wicker are concerned; and is AMENDED to reflect the reduction of the general damages award in favor of Pearlie James to $150,000.00, and to reduce the damages due Pearlie James, Shirley Viverette, and Condria Wicker, by an amount equal to the percentage of fault assigned to Shelia Barnett. Costs of this appeal are *562 assessed against DOTD in the amount of $5,209.84.
AMENDED and AFFIRMED.
EDWARDS and GONZALES, JJ., concur.
NOTES
[1] La.R.S. 13:5104(A) provides:

A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.
[2] La.R.S. 13:5104(B) provides:

B. All suits filed against a political subdivision of the state shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause arises.